UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOYAL BEAUCHAMP,

        Plaintiff,                       CASE NO. 09-cv-15015

v.                                        PAUL D. BORMAN
                                            UNITED STATES DISTRICT JUDGE

DAIMLERCHRYSLER CORPORATION
and CHRYSLER - UAW PENSION
BOARD OF ADMINISTRATION,
jointly and severally,

        Defendants.
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD (Dkt. No. 13)**

This is an employee benefits case. Loyal Beauchamp ("Plaintiff") filed the Complaint in this case on December 28, 2009, alleging that his former employer, DaimlerChrysler Corporation ("Chrysler"),[1] and the Chrysler – UAW Pension Board of Administration (collectively, "Defendants") violated the Employee Retirement Income Security Act ("ERISA") when they denied his claim for pension benefits. (Dkt. No. 1.) On October 25, 2010, Defendants filed the instant Motion for Judgment on the Administrative Record. (Dkt. No. 13.) Plaintiff responded on December 6, 2010. (Dkt. No. 16.) Defendants filed a Reply on December 17, 2010. (Dkt. No. 18.) A hearing was held on July 28, 2011.

For the reasons stated below, the Court will grant Defendants' Motion.

---

[1] After the petition in this case was filed, DaimlerChrysler Corporation filed for bankruptcy, and all liabilities were assumed by the Chrysler Group LLC.

1

## II. BACKGROUND

Plaintiff began working for Chrysler on January 18, 1973. (R. 226.) On March 26, 1973 – approximately two months after he started his employment – Plaintiff's knee was injured in the course of his employment, and he began collecting workers' compensation. (R. 229.) Plaintiff returned to work on May 9, 1973, but only for two days. (Compl. ¶ 10.) He returned to work a second time on November 5, 1973, but was terminated 14 days later on November 19, 1973. (R. 243-45; Compl. ¶ 11.) Plaintiff collected workers' compensation at a weekly rate from March 1973 until June 2006. (R. 232, 238-39.)

On October 24, 2005, Plaintiff filed a claim for pension benefits with the Defendant Pension Board, citing a provision in the 1971 Pension Plan[2] that states employees receive service credit for the time they collected workers' compensation benefits. (R. 255-62.) The Board denied Plaintiff's claim on August 9, 2006, stating that Plaintiff never completed his probationary period, which was a prerequisite to receiving credit for his service or workers' compensation benefits. (R. 247.) Plaintiff appealed the Board's decision on August 16, 2006. (R. 246.) Plaintiff's appeal was denied on December 18, 2006. (R. 235-36.) Plaintiff then filed the instant Complaint with this Court on December 28, 2009, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1024 and 1132(c).

Now before the Court is Defendants' Motion for Judgment on the Administrative Record.

## III. STANDARD OF REVIEW

"Generally, federal courts review a plan administrator's decision to deny benefits de novo." *Schwalm v. Guardian Life Ins. Co. of Amer.*, 626 F.3d 299, 308 (6th Cir. 2010). However, if a plan

---

[2]The administrative record includes three different pension agreements from the years 1971, 1973 and 2003. At oral argument, the parties agreed that the language in the specific portions relevant to the instant matter is the same in each of the three agreements.

"reserves discretionary authority to determine eligibility and construe policy terms," then the arbitrary and capricious standard applies. *Id.*

The 2003 Pension Plan[3] provides as follows:

> The Board of Administration shall have discretionary authority to interpret the Plan and determine eligibility for and the amount of benefits in accordance with the terms of this Pension Plan. Any Board interpretation or Board determination shall be given full force and effect unless it can be shown that the interpretation or determination is arbitrary and capricious.

(R. 55.) The Pension Plan thus reserves discretionary authority for the Board's decisions, and the arbitrary and capricious standard applies. *See Cairns v. Bridgeston/Firestone, Inc.*, 995 F.2d 1066 at *2 (6th Cir. Jun. 8, 1993) (unpublished table decision) (applying arbitrary and capricious standard of review where pension plan contained similar language).

A decision is not arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome . . . ." *Schwalm*, 626 F.3d at 308 (citing *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003)). "Nonetheless, this deferential standard is 'tempered' by any possible conflict of interest where the Plan Administrator both determines eligibility and funds the plan." *Farhner v. United Transp. Union Discipline Income Protection Program*, --- F.3d ----, 2011 WL 1641551, *3 (6th Cir. May 3, 2011).

## IV. ANALYSIS

### A. Evidence Outside of the Administrative Record

In *Moore v. Lafayette Life Insurance Co.*, 458 F.3d 416 (6th Cir. 2006), the Sixth Circuit

---

[3]The 2003 Pension Plan was in effect at the time Plaintiff filed his claim for benefits in October 2005, and is therefore the plan that governs the instant claim. It was, however, amended in September 2007 and is no longer effective. (Defs.' Br. 2, fn. 2.)

noted that:

> a district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.

*Id.* at 430 (citing *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 618-19 (6th Cir. 1998) (Gilman, J., concurring)). Although the Sixth Circuit has not clarified this issue in a published opinion, the relevant unpublished authority indicates that the burden is on the plaintiff to make a "predicate showing" of a procedural irregularity, or to show a conflict that is more than a "conclusory allegation of bias." *Price v. Hartford Life and Acc. Ins. Co.*, 746 F. Supp. 2d 860, 864 (E.D. Mich. 2010) (citing *Huffaker v. Metro. Life Ins.*, 271 Fed. Appx. 493, 504 (6th Cir. 2008)).

Defendant argues that the Court's review is limited to the administrative record because the Complaint does not allege a lack of due process or any other procedural irregularity. Plaintiff does not directly address this argument in his response brief. However, Plaintiff does suggest that the Defendant Pension Board "cherry picked" evidence, and that its "decision to omit its own internal calculations of [Plaintiff's] seniority" is evidence of bias. (Pl.'s Br. 4-5.)

This "conjecture . . . is insufficient to 'throw open the doors of discovery' in an ERISA case." *Likas v. Life Ins. Co. of North America*, 222 Fed. Appx. 481, 486 (6th Cir. 2007) (citing *Putney v. Medical Mutual of Ohio*, 111 Fed. Appx. 803, 806-07 (6th Cir. 2004)). Accordingly, the Court will limit its review in the instant matter to the administrative record. This is consistent with the Order Denying Plaintiff's First Motion for Brief Extension of Discovery previously issued by the Magistrate Judge in this case. (Dkt. No. 15.)

## B. The Board's Decision Was Not Arbitrary and Capricious

Plaintiff's claim is based on language in the 1971 Pension Plan that allows employees receiving workers' compensation payments to accrue 40 hours per week as credited service toward pension eligibility. (R. 333.) Similar language was carried over to the 2003 Pension Plan. (R. 30.)

In denying Plaintiff's claim for pension benefits, the Defendant Board stated as follows:

> A review of your employment history indicates that you never attained seniority, as you never completed your probationary period with the Corporation. Since you never attained seniority, the credited service provisions of the Pension Agreement do not apply to you and service has not been accrued while you were on Leave of Absence for occupational injury during 1973. Furthermore, according to your employment record, you were terminated as a probationary employee in November 1973.

(R. 235.)

The Board's decision is supported by evidence in the administrative record. Plaintiff's Employment Record reflects that he began working on January 18, 1973, and that on March 29, 1973, Plaintiff stopped working due to a "confirmed occupational disability." (R. 244-45.) On November 19, 1973, Plaintiff's Employment Record reflects a separation code for "Permanent Separation, Probationary Employees." (R. 244-45.) The 2003 Pension Plan further provides that new employees are considered probationary "for the first ninety (90) days of their employment[,]" and that "[t]here shall be no seniority among probationary employees." (R. 150-51.) The 2003 Pension Plan also states that a probationary employee who is separated "for an occupational disability arising out of his employment by the Corporation and who is subsequently reinstated shall be required to complete his probationary period . . . ." (R. 151.)

The Court further notes that Plaintiff's Social Security earnings for 1973 were $2,412.12.

5

(R. 290.) Plaintiff's starting rate of pay, as reflected on his Employment Record, was $4.28 per hour. (R. 226.) It appears that Plaintiff received at least two raises ($4.38 and then $4.98) in 1973 (R. 226), but using only the $4.28 figure, Plaintiff would need to work at least 564 hours to earn $2,412.12. Assuming an eight-hour workday, Plaintiff would only need to work approximately 71 days to reach 564 hours. Accordingly, it is unlikely that Plaintiff ever reached the 90 days required to complete his probationary period.

Plaintiff argues that the Board failed to articulate its calculations for determining whether Plaintiff had attained seniority. However, Plaintiff's Employment Record and social security earnings are reflected in the administrative record, as noted *supra*, and both clearly reflect that Plaintiff did not work the required 90 days to attain seniority.

Plaintiff next argues that, regarding Plaintiff's periods of absence from work in 1973, the Board failed to consider that Plaintiff was receiving workers' compensation payments during these times, and that he should receive a 40-hour credit toward seniority for each week he received workers' compensation. But Plaintiff's Employment Record reflects that Plaintiff was temporarily separated from Defendant Chrysler during these periods of time. (R. 226.) As provided in the 2003 Pension Plan:

> An employee who is separated during his probationary period for an occupational disability arising out of his employment by the Corporation and who is subsequently reinstated shall be required to complete his probationary period, and upon doing so shall have a seniority date which includes the time he was separated due to such disability, plus ninety (90) days.

(R. 151.)[4] The 2003 Pension Plan thus provides that Plaintiff could not count the days he was

---

[4]Identical language appears in the 1971 Pension Plan (R. 393) and the 1973 Pension Plan (R. 549).

6

temporarily separated and received workers' compensation towards his seniority status until he completed his probationary period. Because he never completed the period, those days cannot be counted under the Plan.

Plaintiff argues that Defendants should have read his temporary separations in 1973 in accordance with Section 53 of the 1971 Pension Plan, which provides as follows:

> When an employee's absence from work is due solely to disability resulting from sickness or injury and due proof of the disability is given to the plant, he will be returned to work in accordance with his seniority and these rules as nearly as may be as if he had not suffered disability, provided, he passes the required medical examination.

(R. 395.)[5] Plaintiff argues that his "separation" in 1973 should have been classified as an "absence" pursuant to Section 53, and the weeks he collected workers' compensation should have counted toward his seniority status. However, Plaintiff ignores Section 46 of the 1971 Pension Plan: "For the purpose of these Sections (45) through (71) the word 'employee' means an employee who has acquired seniority." (R. 393).[6] It is not disputed that Plaintiff had not acquired seniority at the time of his first separation in late March 1973. The "absence" provision in Section 53 thus did not apply to Plaintiff, and Defendants' refusal to consider this section was not arbitrary and capricious.

Plaintiff asserted at oral argument that Defendants are ignoring a second definition that appears in the 1971 and 1973 Pension Plans: "Except where the context otherwise requires, the term 'employees' means employees of the Corporation within the collective bargaining unit or units

---

[5]The same language is used in the 1973 Pension Plan (R. 552) and the 2003 Pension Plan (R. 154).

[6]Identical language is used in the 1973 Pension Plan (R. 549) and the 2003 Pension Plan (R. 151).

represented by the Local Unions . . . ." (R. 357, 500).[7] Plaintiff also argues that the definition in Section 46 is unclear because it does not clarify how it affects the terms "new employee" and "probationary employee," which appear in the pension plan language at Section 45. (R. 150, 548, and 392.)

"In interpreting a plan, the administrator must adhere to the plain meaning of its language as it would be construed by an ordinary person." *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004). The focus of the Court's review "is whether [the administrator's] interpretation . . . was reasonable." *Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 332 (6th Cir. 2009).

The Court first notes that the definitions of the terms "new employees" and "probationary employees" are self evident when read in the context of Section 45. While some clarifying language in Section 46 may have proved helpful, an ordinary person would not read Sections 45, 46 and 53 to mean that a probationary employee could acquire seniority while on disability leave.

Further, it was reasonable for the Defendant Board to interpret Section 53 as applying only to employees who had achieved seniority. The pension plan specifically provided that this section should be interpreted as referring to "an employee who has acquired seniority," as set forth in Section 46. (R. 151, 393, and 549). This also does not contradict with the other definition of "employees," which explicitly does not apply "where the context otherwise requires[.]" (R. 357, 500.)

Finally, Plaintiff offers his own affidavit and a purported "seniority list" created by the UAW for the year 1973, which Plaintiff claims reflects that he had 1,845 credit hours for that year. (Pl.'s Br. Ex. A - Beauchamp Aff., and Ex. B - List.) These documents are not part of the administrative

---

[7]This section does not appear in the 2003 Pension Plan.

record, and the Court need not consider them. *See supra*, Part A; *Moore*, 458 F.3d at 430. Further, the Court notes that Plaintiff's purported seniority list consists of seven columns, without visible headings, one of which includes the word "BEAUCH" followed by four numbers, including "73" and "1845." It is unclear at what time the list was compiled and what the 1845 figure represents, but Plaintiff's self-serving representation that it reflects the number of hours he had compiled towards seniority conflicts with his social security records, which show total earnings of $2,412.12 for 1973. (R. 290.) If Plaintiff had worked 1,845 hours, he would undoubtedly have earned more. Accordingly, it was not arbitrary and capricious for Defendants to ignore this evidence and consider only the administrative record.

## V. CONCLUSION

For the reasons stated above, the Court will:

(1) **GRANT** Defendants' Motion for Judgment on the Administrative Record, and

(2) **DISMISS** this case **WITH PREJUDICE**.

**SO ORDERED.**

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 8-9-11